Ronald S. BURNS, Plaintiff-Respondent and Cross-Appellant,†

v.

Conrad F. GERES, Jr., and The Northwestern National Casualty Insurance Company, Defendants-Appellants and Cross-Respondents.

Court of Appeals

*No. 86–0985. Argued April 30, 1987.—Decided May 20, 1987.*

(Also reported in 409 N.W.2d 428.)

† Petition to review denied.

For the defendants-appellants and cross-respondents, there were briefs filed by *Eric J. Van Vugt* and *Michael J. Collard* of *Minahan & Peterson, S.C.* of Milwaukee on behalf of Conrad F. Geres, Jr., and by *Terry E. Johnson* of *Peterson, Johnson & Murray, S.C.* of Milwaukee on behalf of Northwestern National Casualty Company. Oral argument by *Eric J. Van Vugt* and *Terry E. Johnson.*

On behalf of the plaintiff-respondent and cross-appellant, there were briefs filed by *Robert H. Bichler* and *Timothy J. Pruitt* of *Thompson & Coates, Ltd.* of Racine. Oral argument by *Robert H. Bichler.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Conrad F. Geres, Jr. (Geres) and The Northwestern National Casualty Insurance Company (Northwestern) appeal a jury verdict in favor of Ronald S. Burns (Burns) in the amount of $71,900 in compensatory damages and $130,000 as punitive damages. Geres and Northwestern contend that the trial court erred when it applied Wisconsin law instead of Arizona law to a slip and fall case upon which a legal malpractice case was premised. In addition, North-

western contends that, under the terms of an exclusionary clause in the malpractice insurance policy, it is not obligated to pay the punitive damages award. Burns cross-appeals, alleging that he is entitled to prejudgment interest on the compensatory damages award. We conclude that the trial court was in error when it relied upon Wisconsin law instead of Arizona law. We therefore reverse and remand for a new trial.

Burns was injured in a slip and fall accident at the Frank Lloyd Wright School of Architecture in Scottsdale, Arizona in 1978. Burns slipped and fell while carrying a five gallon pot full of hot water and potatoes. He sustained serious burns on his face and torso. Burns retained Geres to bring suit against the Frank Lloyd Wright Foundation, an Arizona corporation which ran the school. The statute of limitations would have barred suit in Arizona, but a summons and complaint were filed in Walworth county circuit court. Service upon the Foundation was not obtained and the complaint was eventually dismissed.

For several years, Geres repeatedly misrepresented to Burns that his action was still pending. Geres told Burns of several trial dates when, in fact, none was scheduled. Geres even went so far as to have Burns and his wife attend a three-hour trial preparation session. Geres also communicated several offers of settlement supposedly made by the defendants when none had been made.

Burns eventually learned that Geres' license to practice law had been suspended. Burns then commenced a legal malpractice action against Geres. The complaint alleged that Geres' conduct caused Burns' personal injury claim to be barred and that Geres had acted with reckless disregard for Burns' rights. Burns requested compensatory and punitive damages.

As mandated in *Lewandowski v. Continental Casualty Co.,* 88 Wis. 2d 271, 276 N.W.2d 284 (1979), the trial court applied the "case within a case" methodology; that is, the parties were required to try the original slip and fall case in order to prove the damages in the legal malpractice case. The trial court applied Wisconsin negligence law to the entire trial, including the Wisconsin safe place statute to the slip and fall portion of the trial.

■he threshold issue when examining a conflict of laws case is whether a genuine conflict exists. One would then determine whether the application of any of the multiple choices of law would constitute officious intermeddling in the affairs of another state. If not, one would apply the choice-influencing considerations.[1] *Gavers v. Federal Life Ins. Co.,* 118 Wis. 2d 113, 115–16, 345 N.W.2d 900, 901–02 (Ct. App. 1984).

In Wisconsin, the safe place statute, sec. 101.11, Stats., requires that a place of employment be as safe as the nature of the place will reasonably permit. That section reads in part:

> (1) Every employer shall furnish employment which shall be safe for the employes therein

---

[1]The choice-influencing considerations as set forth in Leflar, *Choice-Influencing Considerations in Conflicts Law,* 41 N.Y.U.L. Rev. 267, 282 (1966), and as adopted in *Heath v. Zellmer,* 35 Wis. 2d 578, 596, 151 N.W.2d 664, 672 (1967), are as follows:

(1) Predictability of results;

(2) Maintenance of interstate and international order;

(3) Simplification of the judicial task;

(4) Advancement of the forum's governmental interests;

(5) Application of the better rule of law.

> and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

*Id.* The Arizona version of the safe place statute only requires ordinary care:

> Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

Ariz. Rev. Stat. Ann. § 23–403(A) (1983).

We therefore conclude that a conflict exists between Wisconsin and Arizona law as to the standard of care required of the Frank Lloyd Wright Foundation. The next step, then, is whether application of Wisconsin law would constitute officious intermeddling in the affairs of the state of Arizona.

Burns' contacts in Wisconsin in relation to the slip and fall in Arizona are so fortuitous and circumstantial that to impose Wisconsin law would constitute officious intermeddling. The only contacts with Wisconsin are that Burns is a Wisconsin resident and

the Frank Lloyd Wright School of Architecture has an "east" campus in Spring Green, Wisconsin, referred to as Taliesin East.[2] However, Burns is seeking to hold an Arizona corporation and landowner liable for an accident occurring on property in Arizona. The duty of a property owner to maintain his property should not vary with the residence of the person who enters the building. To apply Wisconsin law would be an attempt to say that Wisconsin has some legitimate interest in regulating property in Arizona. To say so would also violate the most basic principles of federalism.

The fact that there may have been sufficient minimum contacts to maintain the action in Wisconsin is not relevant here; neither is the fact that the attorney was from Wisconsin or that the malpractice occurred in Wisconsin. Different criteria are applicable when deciding jurisdictional issues rather than conflict of laws issues.

■

Because Wisconsin law was applied in the slip and fall, the jury was improperly instructed as to the standard of care to be applied when determining whether the Frank Lloyd Wright Foundation was negligent. These erroneous instructions affected the substantial rights of the defendants such that a new trial is necessary. *Leahy v. Kenosha Memorial Hosp.,* 118 Wis. 2d 441, 452, 348 N.W.2d 607, 613 (Ct. App. 1984).

The second issue on appeal is whether Northwestern is obligated to pay the punitive damages award under the terms of the insurance policy issued to Geres. Because the effect of the exclusion depends upon the record and the evidence brought out at trial

---

[2]The Scottsdale campus is referred to as Taliesin West.

and we are ordering a new trial, we decline to address this issue.

Finally, Burns contends that he is entitled to pre-verdict interest. While we need not address this issue either, some guidance may aid the parties on the retrial.

Wisconsin law generally allows pre-verdict interest in certain limited situations.

> The rule announced in *Laycock [v. Parker,* 103 Wis. 161, 79 N.W. 327 (1899)], that pre-verdict interest is recoverable only on damages that are either liquidated or liquidable has, with minor modifications, been consistently adhered to ever since.
>
> The most frequently stated rationale for the rule is that if the amount of damages is either liquidated or determinable by reference to some objective standard, the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages. . . . [T]his Court said in *Wyandotte Chemicals Corp. v. Royal Electric Mfg.,* 66 Wis. 2d 577, 587, 225 N.W.2d 648 (1975): "[T]his court has denied interest recovery where the withholding party had no means available to determine that amount which he had to tender in order to prevent interest from accruing."

*Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 771–72, 350 N.W.2d 127, 130 (1984) (citations omitted).

Apart from approximately $1900 in medical bills,[3] the compensatory damages awarded in this case were

---

[3]In *Maskrey v. Volkswagenwerk Aktiengesellschaft,* 125 Wis. 2d 145, 370 N.W.2d 815 (Ct. App. 1985), this court found that pre-

for pain, suffering and disfigurement. An award for those types of damages would be peculiarly within the province of the jury.[4] Pain and suffering damages are rarely determinable by reference to some objective standard. To allow Burns to recover pre-verdict interest would be to explicitly overrule a large and established body of law, an act beyond the powers of this court.

Burns also contends that he is entitled to pre-verdict interest because, according to the testimony of one of his expert witnesses, the case would have been settled by a reasonably competent attorney by the summer of 1979. There was no testimony as to the probable value of settlement. This argument is also without merit. If any figure had been given, it would have been as speculative as any attempt to guess what a jury verdict would have been had Geres taken the case to trial. Clearly this is not a situation where pre-verdict interest is a viable option.

*By the Court.*—Judgment reversed and cause remanded for a new trial.

---

verdict interest was not available on liquidated medical expenses. *See Id.* at 168–69, 370 N.W.2d at 826–27.

[4] "Under our judicial system, we rely primarily upon the good sense of jurors to determine the amount of money which will compensate an individual for whatever loss of well-being he has suffered as a result of injury." *Makowski v. Ehlenbach,* 11 Wis. 2d 38, 42, 103 N.W.2d 907, 910 (1960).